UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| KIEL JAMES PATRICK, LLC<br>*Plaintiff,*<br><br>v.<br><br>THE PARTNERSHIPS AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A",<br>*Defendants.* | C.A. No. 1:25-cv-00633 |

### MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S *EX PARTE* MOTION FOR TEMPORARY RESTRAINING ORDER AND WRIT OF ATTACHMENT

Pursuant to Rule 65(b)(1) of the Federal Rules of Civil Procedure, the Plaintiff, Kiel James Patrick, LLC ("**KJP**" or "**Plaintiff**"), by and through undersigned counsel, submits this Memorandum of Law in support of its Motion for Temporary Restraining Order ("**Motion**"). As set forth below, the Court should **GRANT** KJP's Motion, enjoining and restraining the Partnerships and Unincorporated Associations Identified on *Schedule A* attached to the Complaint (individually and collectively "**Defendants**") from ongoing violations of KJP's rights.

I. **INTRODUCTION**

In this matter, the facts and law establish that the Defendants have violated KJP's rights and justify the granting of a TRO to preserve the status quo and prevent any relief obtained by KJP from (by the Defendants' design) being hollow and ineffective. In short, the Defendants, which have gone to great lengths to conceal their identities and escape the reach of this Court, brazenly and knowingly rip off KJP through their online stores (the Defendant Internet Stores on Temu's online marketplace as defined in the Complaint) for their own financial gain. The Defendants do

so with the belief that they cannot be reached by this Court or held accountable in any meaningful manner because they will be effectively "gone" before KJP can obtain relief, whether monetary or otherwise. The TRO sought by KJP from this Court is necessary to prevent this from happening.

Immediate action by this Court in the form of a TRO is necessary to prevent the Defendants from having, first, confused, misled, and scammed consumers with imitation KJP products and/or then, second, absconding with the resulting ill-gotten funds to beyond the reach of this Court, thereby causing any judgment or relief obtained by KJP to ring hollow and ineffective. The facts make clear that the Defendants know of and planned their wrongful conduct and unfair competition against KJP and do it brazenly, comfortably, and consistently for their own financial benefit, without regard for the harm to the scammed consumers or KJP, because they believe they cannot be held meaningfully accountable.

Absent the protective action of this Court, including with respect to the freezing of the Defendants' U.S. based payment processers, the Defendants intend to, and will likely swiftly upon learning of any action by KJP, abscond with the ill-gotten funds received from violating the KJP Marks and KJP's rights to beyond the reach of this Court. A TRO prevents this, protects both consumers and KJP, and is overwhelmingly supported by the facts and law.

## II. FACTS

Factual support for the TRO is set forth in detail in KJP's Complaint, including the numerous attachments and exhibits thereto, as well as the Declaration of Daniel Sardinha, attached hereto as ***Exhibit A*** ("**Sardinha Declaration**"). However, a brief review of the pertinent facts is necessary and follows.

KJP's Products are marketed and sold at/on the e-commerce store, www.kieljamespatrick.com ("**KJP Website**") and KJP's Products are also sold at the Kiel James

Patrick Flagship Store in Newport, Rhode Island. KJP owns and uses numerous and various trademarks and advertising materials to promote, advertise, and sell its Products and its trademarks and advertising materials are closely associated with KJP's brand and Products, as well as their high-quality and nature.

Through its advertising, marketing, and promotional expertise, KJP has developed its business such that the KJP brand is now internationally recognized with millions of followers domestically and worldwide. One of KJP's Instagram accounts—where KJP's Products and its advertising materials, and trademarks are consistently featured—has over 1,200,000 "followers" who follow and support KJP. One of KJP's TikTok accounts—where KJP Products and its advertising materials, and trademarks are consistently featured has over 1,400,000 "followers" who follow and support KJP.

KJP's business success is closely related to its renowned Internet and social media advertising, marketing, and promotional skills and abilities, which generate multiple millions of views, likes, comments, and other interactions in relation to the KJP brand and generate exposure worth millions of dollars in more traditional methods of advertising and promotion. KJP's advertising, marketing, and promotional efforts include, but are not limited to, the use and promotion of its trademarks and advertising materials across the Internet, print media, webpages, and most notably social media.

KJP is the owner of numerous valid and subsisting trademark registrations with the United States Patent and Trademark Office ("**USPTO**") including the following: (a) U.S. Reg. No. 5787726; (b) U.S. Reg. No. 4217951; (c) U.S. Reg. No. 4217952; (d) U.S. Reg. No. 5799190; (e) U.S. Reg. No. 4233031; (f) U.S. Reg. No. 6095333; (g) U.S. Reg. No. 6095331; (h) U.S. Reg. No. 5787724; and (i) U.S. Reg. No. 4819102 (collectively and individually, as well as all common

law rights therein, "**KJP Marks**"). KJP has expended substantial time, money, and other resources in developing, advertising, marketing, and promoting the Marks, which has resulted in the Marks being widely recognized and the Marks being exclusively associated by consumers, the public, and the trade with Products distinctly from KJP. Due to the widespread popularity of the Products, the Marks are famous trademarks pursuant to 22 U.S.C. § 1125(c).

Additionally, the KJP Website and KJP's social media accounts consistently post, as advertising and marketing material and content, original photographs, videos, and other content ("**KJP Advertising Materials**") that feature a distinct, cultivated, and recognizable aesthetic and point of view that is uniquely associated with the KJP brand. Like with the KJP Marks, KJP has expended substantial time, money, and other resources in developing, advertising, marketing, and promoting the KJP Advertising Materials, which has resulted in their being widely recognized and exclusively associated by consumers, the public, and the trade with products from KJP.

Due to KJP's success and notoriety, the KJP Marks and KJP Advertising Materials are frequently emulated, infringed, and/or used without authorization on social media and online marketplaces that are challenging to timely and effectively police. Specifically, KJP's Advertising Materials are often used, copied, manipulated, and featured without KJP's authorization to create the false impression of an association with KJP and/or mislead or confuse consumers into wrongfully believing that there is an association with KJP when there is none. These false statements and misrepresentations occur frequently on social media and online marketplaces that are challenging for KJP to timely and effectively police.

This unauthorized use, infringement, and harmful conduct includes the Defendants. KJP has never granted the Defendants any authorization, permission, or license to use, copy, or reproduce the KJP Advertising Materials. KJP has similarly never granted the Defendants

4

authorization, permission, or license to use, copy, or reproduce, either in the form of exact, manipulated, or Artificial Intelligence ("AI") generated photographs—videos, and content, including KJP's photographs from KJP's Website. KJP has, lastly, never granted the Defendants any authorization, permission, or license to use the KJP Marks, nor granted the Defendants the right sell or offer for sale KJP's Products.

This has not stopped the Defendants. They are offering for sale and selling their imitation and cheaper products on the Defendant Internet Stores on Temu without KJP's permission or consent. By the Defendants' design, the Defendant Internet Stores appear to unknowing customers to be an authorized online retailer, store, or wholesaler of genuine KJP Products, when they are not. They use and/or feature exact, manipulated, and/or AI generated KJP Advertising Materials to mislead consumers and create the false impression that they and their imitation KJP products are genuine KJP products and/or approved or authorized by or affiliated with KJP when they are not. Specifically, the Defendants are using exact, manipulated, and/or AI generated photographs of KJP's products and sweaters taken from the KJP Website to advertise their imitation KJP sweaters. The Defendants are further deliberately manipulating these photographs to remove KJP's tags and the KJP Marks.

KJP consequently knows of numerous instances by consumers of actual confusion with the Defendants and related to their unauthorized use of the KJP Marks and KJP's Advertising Materials and original content. Even more egregiously, the Defendants have gone to great lengths to anonymously operate their Internet Stores and prevent KJP or consumers from accessing usable contact information. Likewise, the Defendants maintain offshore bank accounts and use their PayPal account(s) (other similarly situated payment processors) to take payment from consumers for unauthorized imitation KJP products. As is a common tactic for similar violators, the Defendants move or will soon move such ill-gotten funds from their PayPal or other account(s)

to offshore accounts to abscond with them and escape the jurisdiction of this Court.

### III. STANDARD OF REVIEW

The overarching purpose of a temporary restraining order is to preserve the status quo. *See Letourneau v. Aul*, 2015 U.S. Dist. LEXIS 117823, *5-6 (D.R.I. June 3, 2015) (explaining that the purpose of an injunction "is to preserve the status quo, freezing an existing situation so as to permit the trial court, upon full adjudication of the case's merits, more effectively to remedy discerned wrongs") (quoting *CMM Cable Rep., Inc. v. Ocean Coast Properties, Inc.*, 48 F.3d 618, 620 (1st Cir. 1995)). The status quo generally has been "defined as the last, peaceable, noncontested status of the parties." *TriMark USA, Inc. v. Performance Food Group Co., LLC*, 667 F. Supp. 2d 155, 159 (D. Mass. 2009) (quoting *Kos Pharm., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004)). "In a trademark case," the status quo "is the situation prior to the time the junior user began use of its contested mark: the last peaceable, non-contested status." *Id.* (quoting *Kos Pharm., Inc.*, 369 F.3d at 708).

The four elements necessary for a temporary restraining order to issue are the same as those required for the grant of a preliminary injunction. *See Harris v. Wall*, 217 F. Supp. 3d 541, 552 (D.R.I. 2016). They are: "(1) the movant's likelihood of success on the merits; (2) whether and to what extent the movant would suffer irreparable harm if the request were rejected; (3) the balance of hardships between the parties; and (4) any effect that the injunction or its denial would have on the public interest." *Díaz-Carrasquillo v. García-Padilla*, 750 F.3d 7, 10 (1st Cir. 2014); *see also Ross-Simons of Warwick, Inc. v. Baccarat, Inc.*, 102 F.3d 12, 15 (1st Cir. 1996); *Symetra Life Ins. Co. v. Emerson*, 2018 U.S. Dist. LEXIS 205039, *1 (D. Me. Dec. 4, 2018).

However, those "four factors are not weighted equally; 'likelihood of success is the main bearing wall of this framework' and of primary importance." *Harris*, 217 F. Supp. 3d at 553 (quoting *W Holding Co. v. AIG Ins. Co.-Puerto Rico*, 748 F.3d 377, 383 (1st Cir. 2014)). As the

First Circuit Court of Appeals has observed, "[t]he *sine qua non* of that formulation is whether the plaintiffs are likely to succeed on the merits." *Weaver v. Henderson*, 984 F.2d 11, 12 (1st Cir. 1993). Moreover, "[i]rreparable harm is measured on 'a sliding scale, working in conjunction with a moving party's likelihood of success on the merits, such that the strength of the showing necessary on irreparable harm depends in part on the degree of likelihood of success shown.'" *Harris*, 217 F. Supp. 3d at 553 (quoting *Braintree Labs., Inc. v. Citigroup Glob. Markets Inc.*, 622 F.3d 36, 42-43 (1st Cir. 2010)).

## IV.  ARGUMENT

KJP meets the elements necessary for this Court to grant the emergency *ex parte* temporary restraining order against the Defendants and restrain their ongoing wrongful conduct.

First, KJP has a strong likelihood of success on the merits of its claims against the Defendants. The Defendants are knowingly and intentionally using exact, manipulated, and/or AI generated photographs of KJP's Products to mislead consumers and create the false impression that they and their imitation KJP products are genuine KJP Products and/or authorized by KJP when they are not. This is straight forward unfair competition and "[i]t is well established that using a photograph of another's product to sell one's own cheaper product is unfair competition under Section 43(a)." *See Sublime Prod., Inc. v. Gerber Prod., Inc.*, 579 F. Supp. 248, 250 (S.D.N.Y. 1984) (citing *L'Aiglon Apparel v. Lana Lobell*, 214 F.2d 649 (3rd Cir. 1954)); *see also American Optical Co. v. Rayex Corp.*, 266 F.Supp. 342 (S.D.N.Y. 1966), aff'd, 394 F.2d 155 (2nd Cir. 1968)).

Second, KJP has shown that it has suffered, and absent immediate injunctive relief, will continue to suffer, irreparable harm. As a general proposition, "harm to goodwill, like harm to reputation, is the type of harm not readily measurable or fully compensable in damages—and for that reason, more likely to be found 'irreparable.'" *K-Mart Corp. v. Oriental Plaza, Inc.*, 875 F.2d

907, 915 (1st Cir. 1989). For Lanham Act and consumer confusion claims, courts recognize that once a plaintiff demonstrates a likelihood of success on the merits, "it is presumed that without injunctive relief [plaintiff] will be irreparably harmed." *See TriMark USA, Inc.*, 667 F. Supp. 2d at 169 (citing *Borinquen Biscuit Corp. v. M.V. Trading Corp.*, 443 F.3d 112, 115 (1st Cir. 2006)); *see also Keds Corp.* v. *Renee Int'l Trading Corp.*, 888 F.2d 215, 220 (1st Cir. 1989); *I.P. Lund Trading ApS* v. *Kohler Co.*, 163 F.3d 27, 33 (1st Cir. 1998); *Truck Equip. Serv. Co. v. Fruehauf Corp.*, 536 F.2d 1210, 1216 (8th Cir. 1976) (explaining that the deceptive practice of using a plaintiff's photographs of its products to trade upon a plaintiff's reputation, confuse consumers, and/or sell a defendant's products "is of the same economic nature as trademark infringement").

Third, with respect to the balance of the hardships between KJP and the Defendants, the scale tips heavily in KJP's favor. When weighed against the injury to KJP's business goodwill and investment in establishing its brand, the Defendants' infringing conduct militate in favor of granting immediate injunctive relief, consistent with the protections afforded under federal law.

Fourth, and finally, the public interest favors the issuance of a temporary restraining order. The public has no interest in the continued perpetration of conduct that violates KJP's intellectual property rights, in addition to the likelihood of confusion suffered by customers who wish to purchase products from KJP. *See*, *e.g.*, *TriMark USA, Inc.*, 667 F. Supp. 2d at 170 (explaining that in instances of consumer confusion that "the public interest almost always favors the granting of otherwise appropriate injunctions") (quoting *Commerce Bank & Trust Co. v. TD Banknorth, Inc.*, 554 F. Supp. 2d 77 (D. Mass. 2008)) (internal quotation marks omitted).

    a. **KJP Has a Likelihood of Success on the Merits of Its Claims.**

The Defendants are unfairly competing, and the facts and law support that KJP is likely to prevail on its claims of False Designation of Origin and False Advertising against the Defendants.

"The Lanham Act forbids the use of false designations of origin and false descriptions or representations in the advertising and sale of goods and services." *Landrau v. Solis Betancourt*, 554 F. Supp. 2d 102, 110 (D.P.R. 2007). In other words, the Lanham Act prohibits unfair competition and creates claims for false designation of origin and false advertising.

Even more specifically, as precisely occurring in this case by the Defendants, the Lanham Act "applies where a defendant advertises its inferior and much cheaper product by featuring a photographic reproduction of plaintiff's product, [and] thus creates the impression that his product is precisely the same as plaintiffs' and causes trade to be diverted from plaintiff to himself and other trade to be lost." *Crossbow, Inc. v. Dan-Dee Imports, Inc.*, 266 F. Supp. 335, 339 (S.D.N.Y. 1967); *see also, e.g.*, *Elegant Furniture & Lighting, Inc. v. GOLIGHTS, Inc.*, No. 22CV07172JMAST, 2024 WL 343974, at *5 (E.D.N.Y. Jan. 30, 2024) (granting an injunction based upon the defendant's palming off of the plaintiff's good as its own and because the defendant used the plaintiff's photographs of its lighting products in the lighting market to make sales of lighting fixtures to the detriment and expense of plaintiff); *Truck Equip. Serv. Co.*, 536 F.2d at 1216 (the defendant's use of the plaintiff's photographs of its products was deceptive and confused consumers and was "a false representation prohibited by § 43(a) of the Lanham Act").

### i. *False Designation of Origin*

Knowingly and intentionally, the Defendants are using exact, manipulated, and/or AI generated photographs of KJP Products taken from the KJP Website to confuse and deceive consumers and sell imitation and inferior KJP products. The Lanham Act prohibits this because "individuals may not falsely misrepresent the origin of goods," irrespective of the form of the misrepresentation. *Blake v. Pro. Coin Grading Serv.*, 898 F. Supp. 2d 365, 382 (D. Mass. 2012).

False designation of origin claims frequently take the form of "passing off." *See Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 28, 123 S. Ct. 2041, 2045, 156 L. Ed. 2d 18 (2003); *see also John G. Danielson, Inc. v. Winchester-Conant Properties, Inc.*, 322 F.3d 26, 45 (1st Cir. 2003). "Passing off . . . occurs when a producer misrepresents his own goods or services as someone else's [product]." *Dastar Corp.*, 539 U.S. at 28.[1] It "has been defined as an attempt by one person to induce customers to believe that his products are actually those of another." *Quabaug Rubber Co. v. Fabiano Shoe Co.*, 567 F.2d 154, 161 (1st Cir. 1977); *Eckel Indus., Inc. v. Primary Bank*, 26 F. Supp. 2d 313, 316 n.1 (D.N.H. 1998). Passing off is prohibited "to enforce a standard of fair dealing in the marketplace." *Vogue Ring Creations, Inc. v. Hardman*, 410 F. Supp. 609, 613 (D.R.I. 1976). It is "unfair and unethical to take business away from a competitor by passing off one's goods as the goods of a competitor [and it is] firmly entrenched as a rule of law." *Id.*

Passing off similarly takes different forms and "may be either 'express' or 'implied.'" *Lamothe v. Atl. Recording Corp.*, 847 F.2d 1403, 1406 (9th Cir. 1988). "Express passing off occurs when a business labels its goods or services with a mark identical to that of another enterprise, or otherwise expressly misrepresents the origin of the goods or services." *Id.* "Implied passing off involves the use of a competitor's advertising material, or a sample or photograph of the competitor's product, to impliedly represent that the product being sold is made by the competitor." *Id.*; *see also Trout v. Elite Aluminum Corp.*, No. EDCV 06-0830 SGL OPX, 2007 WL 2778911, at *2 (C.D. Cal. Sept. 18, 2007).

---

[1] "Reverse passing off . . . is the opposite [and is when the] producer misrepresents someone else's goods or services as his own." *See Dastar Corp.*, 539 U.S. at 28. Reverse passing off may also occur "when a person removes or obliterates the original trademark, without authorization, before reselling goods produced by someone else." *Landrau v. Solis Betancourt*, 554 F. Supp. 2d 102, 110 (D.P.R. 2007).

10

Here, the Defendants have unquestionably engaged, and are engaging, in passing off. They have without any authorization (1) taken photographs of KJP sweaters from the KJP Website, (2) conspicuously and deliberately manipulated those photographs, in instances through the use of AI tools and technologies, to remove KJP's tags and the KJP Marks from the sweaters in those photographs, and then (3) used those photographs to advertise and sell the Defendants' imitation KJP products on their stores on Temu's online marketplace. A review of the exhibits to the Complaint makes this abundantly clear, further supported by the Sardinha Declaration.[2]

The Defendants' taking, manipulating, and using of KJP's photographs, *ipso facto*, is an attempt by Defendants to confuse customers into believing that the inferior sweaters that they are advertising and selling on the Defendant Internet Stores are KJP's genuine sweaters. By using KJP's photographs, the Defendants seek to, first, unfairly trade off KJP's goodwill and, second, create confusion as to the source of their products/sweaters in the mind of the buyer. They have knowingly misrepresented that their imitation, and significantly cheaper, sweaters are the same as KJP genuine sweaters or somehow associated with KJP. By law and fact, this is false designation of origin and prohibited by the Lanham Act as unfair competition.

    ii. *False Advertising*

Likewise, the Defendants' conduct constitutes unfair competition in the form of false advertising. The Defendants are falsely advertising on the Internet to consumers that their products/sweaters are KJP's genuine Products/sweaters when they are not.

---

[2] For example, the exhibits show that Defendants are using photographs displaying not only the exact same unique sweater designs, with the tags and KJP Marks removed, but also that the photographs display the same unique folding(a) and stylization of the sweater. Specifically, from the viewpoint of the consumer looking at the photograph, most sweaters are folded so that one sleeve/cuff of the sweater is placed over the lower left corner of the sweater's front. This is indicative of KJP in that KJP's sweaters are frequently folded and styled in this particular manner.

For a false advertising claim, "a plaintiff must demonstrate that (1) the defendant made a false or misleading description of fact or representation of fact in a commercial advertisement about his own or another's product;[3] (2) the misrepresentation is material, in that it is likely to influence the purchasing decision; (3) the misrepresentation actually deceives or has the tendency to deceive a substantial segment of its audience; (4) the defendant placed the false or misleading statement in interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the misrepresentation, either by direct diversion of sales or by a lessening of goodwill associated with its products." *Cashmere & Camel Hair Mfrs. Inst. v. Saks Fifth Ave.*, 284 F.3d 302, 310–11 (1st Cir. 2002) (footnote added). The Defendants' conduct is all the foregoing.

It is additionally well established that "[m]essages conveyed in visual images are to be considered in false advertising claims brought under the Lanham Act." *Annalee Mobilitee Dolls, Inc. v. Townsend Design Studios, Inc.*, No. CIV. 03-327-JD, 2003 WL 22901680, at *15 (D.N.H. Dec. 9, 2003); *see also Gillette Co. v. Norelco Consumer Prod. Co.*, 946 F. Supp. 115, 128 (D. Mass. 1996) ("[t]he messages conveyed in visual images are to be considered in section 43(a) cases"); *S.C. Johnson & Son, Inc. v. Clorox Co.*, 930 F. Supp. 753, 781 (E.D.N.Y. 1996) ("the Court is not limited to the spoken words: the visual images can be equally important").

At the injunctive relief stage, "a showing that the defendant's activities are likely to cause confusion or to deceive customers is sufficient." *Cashmere & Camel Hair Mfrs. Inst.*, 284 F.3d at 311; s*ee also, e.g., Flowserve Corp. v. Hallmark Pump Co.*, No. 4:09-CV-0675, 2011 WL

---

[3] A "description or representation of fact in an advertisement" may be either "false and/or misleading." *Azurity Pharms., Inc. v. Edge Pharma, LLC*, 45 F.4th 479, 486 (1st Cir. 2022). A "literally false" statement may either be "explicit" or "convey[ed] by necessary implication." *Clorox Co. P. R. v. Proctor & Gamble Com. Co.*, 228 F.3d 24, 34-35 (1st Cir. 2000). "[W]hen an advertisement is literally false, a plaintiff can succeed on a false advertising claim without evidence of consumer deception." *Spruce Env't Techs., Inc. v. Festa Radon Techs., Co.*, No. CIV.A. 15-11521-NMG, 2015 WL 4038802, at *2 (D. Mass. July 2, 2015).

1527951, at *7 (S.D. Tex. Apr. 20, 2011) (finding that the defendant made a "literally false statement" and that the defendant's "actions resulted in false and misleading representations to the consuming public" when the defendant used its website to advertise for sale its industrial pumps by using pictures of the plaintiff's competing industrial pump); *Sublime Prod., Inc.*, 579 F. Supp. at 250 (granting injunctive relief and finding "deceptive advertising" based upon the defendants' use of plaintiff's photographs of lamps to solicit customers for their own copies of the lamps); *American Optical Co.*, 266 F. Supp. at 342 (finding that the defendants "have committed a wrong by using a photograph of plaintiffs' product to sell their own inferior quality product and indeed filling orders with models different from that pictured in the catalogue"); *L'Aiglon Apparel*, 214 F.2d at 649 (finding that the defendant made a "false representation" and harmed the plaintiff when the defendant used a photograph of plaintiff's dress to advertise defendant's cheaper dress).

Here, the Defendants are unfairly competing and falsely advertising by using unauthorized exact, manipulated, or AI generated photographs of KJP's sweaters from the KJP Website to advertise and sell the Defendants' inferior and significantly cheaper sweaters on their stores on Temu's website. By doing so, the Defendants are competing with KJP, commercially advertising, and misleading consumers by falsely representing the nature and source of its sweaters. Likewise, a review of the exhibits to the Complaint makes this abundantly clear, further supported by the Sardinha Declaration.

The Defendants' advertising is literally false, so materiality and deception are presumed. *See supra*, n. 2. Even still, the Defendants' misrepresentations are material and harmful, both by a direct diversion of sales and by a lessening of goodwill associated with KJP Products, because they are likely to influence the purchasing decision of consumers. Specifically, the Defendants are offering their imitation sweaters for much lower prices than KJP's genuine sweaters. These misrepresentations actually deceive and have the tendency to deceive a substantial segment of

consumers because they create the mistaken impression that KJP's Products are worth less than they are, or that KJP's Products can be produced and sold for a lower price. It further deceives consumers because they may believe they are receiving the product of superior quality depicted in the photographs of KJP's sweaters, when they will not. Again, by law and fact, this is false advertising and prohibited by the Lanham Act as unfair competition.

b. **Absent Injunctive Relief, KJP Will Continue to Suffer Irreparable Harm.**

As discussed above, KJP has shown the second element justifying the need for a temporary restraining order: it has suffered, and absent immediate injunctive relief, will continue to suffer irreparable harm. "[H]arm to goodwill, like harm to reputation, is the type of harm not readily measurable or fully compensable in damages—and for that reason, more likely to be found 'irreparable.'" *K-Mart Corp.*, 875 F.2d at 915. And, in the specific context of a consumer confusion claims, courts have recognized that once a plaintiff demonstrates a likelihood of success on the merits, "it is presumed that without injunctive relief [plaintiff] will be irreparably harmed." *See TriMark USA, Inc.*, 667 F. Supp. 2d at 169 (citing *Borinquen Biscuit Corp. v. M.V. Trading Corp.*, 443 F.3d 112, 115 (1st Cir. 2006)); *see also Keds Corp.*, 888 F.2d at 220; *I.P. Lund Trading ApS*, 163 F.3d at 33. Without immediate injunctive relief, restraining the Defendants from continuing in their infringing conduct, KJP will continue to suffer harm to its goodwill and reputation. Injunctive relief is therefore necessary to prevent ongoing, irreparable harm. Furthermore, it can be reasonably anticipated that the Defendants' conduct will continue and likely expand as KJP introduces additional and new seasonal and holiday products.

c. **The Balance of the Equities Weighs in KJP's Favor.**

As for the balance of the equities, this element, too, weighs heavily in KJP's favor. There is no justification for why the Defendants should continue to violate KJP's intellectual property

rights. KJP has invested in building a brand built on its trademarks, which the Defendants have coopted for their own financial gain. Moreover, issuing a temporary restraining order here does not overburden any of the Defendants. All they would be prohibited from doing is continuing to violate KJP's intellectual property rights. Thus, the balance of the equities in this case weighs in KJP's favor.

### d. Injunctive Relief Is in the Public Interest.

In addition to causing imminent and irreparable injury to KJP, the violation of KJP's rights harms the public interest because the Defendants' wrongful conduct is likely to cause consumer confusion. This is why, with respect to consumer confusion, "the public interest almost always favors the granting of otherwise appropriate injunctions." *See TriMark USA, Inc.*, 667 F.2d at 170. The public also has no interest in the Defendants' continued theft of KJP's Advertising Materials. *See I.P. Lund Trading Aps*, 163 F.3d at 35-36 (explaining that the purpose of the Laham Act is to prevent the use of intellectual property in a way that "confuses the public about the actual source of the goods or service") (quoting *Star Fin. Servs., Inc. v. Aastar Mortgage Corp.*, 89 F.3d 5, 9 (1st Cir. 1996)). Accordingly, the public interest favors the issuance of a temporary restraining order against the Defendants.

### e. The Court Should Issue Injunctive Relief *Ex Parte*.

Under Rule 65(b)(1)(B) of the Federal Rules of Civil Procedure, this Court "may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if: (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required." As set forth in the Sardinha Declaration, the need

for *ex parte* relief here is clear: if the Defendants are given prior notice of an injunction, KJP's requested relief will ring hollow, as the Defendants will be allowed to close down the Defendant Internet Stores, and shut off their third-party payment vendor accounts, including PayPal.

As the Second Circuit Court of Appeals has observed, while courts frown upon issuing temporary restraining orders without notice, "there are occasions when such orders are to be countenanced." *In re Vuitton Et Fils S.A.*, 606 F.2d 1, 4 (2nd Cir. 1979). Where, as here, "[i]f notice were required," it would "serve only to render fruitless further prosecution of the action." *Id.* at 5. Considering the specific relief sought in this Motion for Temporary Restraining Order, and the nature of the irreparable harm KJP faces, advance notice to these the Defendants should not be required, consistent with Rule 65(b)(1)(B) of the Federal Rules of Civil Procedure.

    **f.**   **The Court Should Attach and Restrain the Defendants' Funds.**

Finally, KJP also requests that the Court issue an Order (a) attaching the funds of the Defendants in their accounts at PayPal, Inc. and other similarly situated payment processers ("**PayPal**"); and (b) temporarily restraining the Defendants' funds at PayPal until at least KJP (1) serves the Defendants and (2) a post-attachment hearing is held. The reason for doing so is straightforward: unless the Court attaches the funds in the Defendants' accounts at PayPal and other similarly situated payment processers, the Defendants would be allowed to transfer the funds from those accounts, preventing and frustrating any judgment KJP obtains against the Defendants.

This Court possesses the inherent authority to issue a prejudgment asset attachment and restraint where, as here, a complaint seeks relief of an equitable nature. *See*, *e.g.*, *Reebok Int'l, Ltd. v. Marnatech Enterprises, Inc.*, 970 F.2d 552, 559-60 (9th Cir. 1992) (explaining that "[b]ecause the Lanham Act authorizes the district court to grant [the plaintiff] an accounting of [the infringers'] profits as a form of final equitable relief, the district court had the inherent power

to freeze [the infringer'] assets in order to ensure the availability of that final relief" and further reasoning that an asset freeze injunction is "designed to preserve the possibility of an effective accounting of [the infringers'] profits and the return of profits fraudulently obtained: that objective is permissible and within the power of the district court"); *Tiffany (NJ) LLC, Tiffany & Co. v. China Merchants Bank*, 589 F. App'x 550, 552 (2nd Cir. 2014), *as amended* (2nd Cir. Sept. 23, 2014) ("In accordance with our holding in *Gucci*—and well settled Supreme Court precedent—a claim for an accounting of profits under the Lanham Act is equitable in nature. Therefore, the district court had the equitable authority to issue a prejudgment asset freeze in this case."); *Lorillard Tobacco Co. v. Montrose Wholesale Candies*, 2005 WL 3115892, at *13 (N.D. Ill. Nov. 8, 2005) (concluding that "the court has the authority to enter an order freezing assets in cases where the plaintiff seeks an equitable remedy generally . . . and specifically, in Lanham Act cases such as this one") (internal citations omitted).

Under Rule 64(a) of the Federal Rules of Civil Procedure, "[a]t the commencement of and throughout an action, every remedy is available that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment." And, pursuant to Rule 64(b), the remedies available include, among other things, attachment. Turning to applicable state law, Rhode Island law permits an *ex parte* attachment in the following circumstance:

> "*In any civil action of an equitable character*, at or after the filing of the complaint, the complainant may move the superior court, ex parte, to issue a writ of attachment, to run against the property of the Defendants or any Defendants in the case; and the court, in its discretion, if the cause is of such a nature that an attachment of property is for the proper security of the complainant, shall on the motion, properly supported by affidavits to be filed in the cause, enter an order granting a writ of attachment, which writ may command the attachment of the real and personal estate of the Defendants, including his or her personal estate in the hands or

17

> possession of any person, co-partnership or corporation, as the trustee of the Defendants and his or her stock or shares in any banking association or other incorporated company, like a writ of attachment at the commencement of a civil action in conformity to the specific directions in the court's order; except as provided in § 6A-7-602, and shall be served in like manner and be subject to like incidents as a writ of attachment issued at the commencement of a civil action, and for such ad damnum, as shall be directed in the court's order and stated in the writ. And all property so attached shall be held for the security of any final judgment which the complainant may obtain in his or her favor in the cause, in pursuance of the directions of the order granting the writ of attachment. If a writ of attachment runs against real property and title to the real property is held in the name of a partnership, the writ shall include the name of the partnership."

R.I. Gen. Laws § 10-5-5 (emphasis added).

Here, an order attaching and restraining the Defendants' funds at Paypal and other similarly situated payment processors provides KJP with the necessary security it needs on its claims against the Defendants, particularly on its claim under the Lanham Act for an accounting of the Defendants' ill-gotten profits. At this time, the Defendants appear, upon information and belief, to be operating out of a foreign jurisdiction, specifically, the People's Republic of China and using Temu platform and/or website and PayPal's platforms, making their identities difficult to ascertain. Further, because KJP seeks equitable relief in this case by virtue of a demand for an accounting and profits and for injunctive relief, unless the Defendants' funds are frozen, the Defendants will retain the opportunity to remove those assets prior to judgment—and prior to a post-attachment hearing. *See CSC Holdings, Inc. v. Redisi*, 309 F.3d 988, 996 (5th Cir. 2002) ("Since the assets in question here were profits the [Defendants] made by unlawfully stealing [the plaintiff's] services, the freeze was appropriate and may remain in place pending final disposition 15 U.S.C. § 1117(a) of the case."); *see also Lorillard Tobacco Co.*, 2005 WL 3115892, at *13. The prejudgment attachment and restraint remedy sought here will alleviate that problem, securing the Defendants' funds to ensure that KJP is not left with a hollow remedy.

## V.  CONCLUSION

For those reasons, KJP respectfully requests that this Court grant KJP's *Ex Parte* Motion for Temporary Restraining Order and Writ of Attachment.

        The Plaintiff,
        Kiel James Patrick, LLC,
        By its Attorney,

        /s/ C. Alexander Chiulli
        C. Alexander Chiulli, Esq. (Bar No. 9139)
        Charles J. Russo, Esq. (Bar No. 10751)
        Savage Law Partners, LLP
        564 South Water Street Providence, RI 02903
        Email:achiulli@savagelawpartners.com
        Email:crusso@savagelawpartners.com
        Tel: (401) 238-8500
        Fax: (401) 648-6748

## **CERTIFICATE OF SERVICE**

    I, C. Alexander Chiulli, attorney for Kiel James Patrick, LLC, hereby certify that on November 26th, 2025, I served a copy of the foregoing by CM/ECF electronic mail notification to all counsel of record.

                                              */s/ C. Alexander Chiulli*_____