# **<u>Exhibit A</u>**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

|  |  |  |
|---|---|---|
| KIEL JAMES PATRICK, LLC<br>*Plaintiff*,<br><br>v.<br><br>THE PARTNERSHIPS AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A",<br>*Defendants.* | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | C.A. No. |

**DECLARTION OF DANIEL SARDINHA IN SUPPORT OF PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND ORDER OF ATTACHMENT**

I, Daniel Sardinha, hereby declare pursuant to 28 U.S.C. § 1746 that the following is true and correct.

1. I am the Chief Communications Officer at Kiel James Patrick, LLC ("**KJP**"). My responsibilities include protecting KJP's products and trademarks including from infringement and counterfeiting. I am making this declaration in support of KJP's Motion For Temporarily Restraining Order and Writ of Attachment.

KJP and its Business & Innovation

2. KJP's Products are marketed and sold at/on the e-commerce store, www.kieljamespatrick.com ("**KJP Website**") and KJP's Products are also sold at the Kiel James Patrick Flagship Store in Newport, Rhode Island. KJP owns and uses numerous and various trademarks and advertising materials to promote, advertise, and sell its Products and its trademarks and advertising materials are closely associated with KJP's brand and Products, as well as their high-quality and nature.

3. Through its advertising, marketing, and promotional expertise, KJP has developed its business such that the KJP brand is now internationally recognized with millions of followers domestically and worldwide. One of KJP's Instagram accounts—where KJP's Products and its advertising materials, and trademarks are consistently featured—has over 1,300,000 "followers" who follow and support KJP. One of KJP's TikTok accounts—where KJP Products and its advertising materials, and trademarks are consistently featured has over 1,500,000 "followers" who follow and support KJP.

4. KJP's business success is closely related to its renowned Internet and social media advertising, marketing, and promotional skills and abilities, which generate multiple millions of views, likes, comments, and other interactions in relation to the KJP brand and generate exposure worth millions of dollars in more traditional methods of advertising and promotion. KJP's advertising, marketing, and promotional efforts include, but are not limited to, the use and promotion of its trademarks and advertising materials across the Internet, print media, webpages, and most notably social media.

5. KJP is the owner of numerous valid and subsisting trademark registrations with the United States Patent and Trademark Office ("**USPTO**") including the following: (a) U.S. Reg. No. 5787726; (b) U.S. Reg. No. 4217951; (c) U.S. Reg. No. 4217952; (d) U.S. Reg. No. 5799190; (e) U.S. Reg. No. 4233031; (f) U.S. Reg. No. 6095333; (g) U.S. Reg. No. 6095331; (h) U.S. Reg. No. 5787724; and (i) U.S. Reg. No. 4819102 (collectively and individually, as well as all common law rights therein, "**KJP Marks**").

6. KJP has expended substantial time, money, and other resources in developing, advertising, marketing, and promoting the KJP Marks, which has resulted in the KJP Marks being widely recognized and the KJP Marks being exclusively associated by consumers, the public, and

the trade with Products distinctly from KJP. Due to the widespread popularity of the Products, the KJP Marks are famous trademarks pursuant to 22 U.S.C. § 1125(c).

7.  The KJP Website and KJP's social media accounts regularly post, as advertising and marketing material and content, original photographs, videos, and other content ("**KJP Advertising Materials**") that feature a distinct, cultivated, and recognizable aesthetic and point of view that is uniquely associated with KJP brand.

8.  Like with the KJP Marks, KJP has expended substantial time, money, and other resources in developing, advertising, marketing, and promoting the KJP Advertising Materials, which has resulted in the KJP Advertising Materials being widely recognized and the KJP Advertising Materials being exclusively associated by consumers, the public, and the trade with Products distinctly from KJP.

9.  The KJP Marks and KJP Advertising Materials are frequently infringed and/or used without authorization on social media and online marketplaces that are challenging to timely and effectively police. Specifically, KJP's Advertising Materials are often used, copied, manipulated, and featured without KJP's authorization to create the false impression of an association with KJP and/or mislead or confuse consumers into wrongfully believing that there is an association with KJP when there is none. These false statements and misrepresentations occur frequently on social media and online marketplaces that are challenging to timely and effectively police.

The Defendants' Illegitimate Products and Unauthorized Activities

10.  I have examined the Complaint and its attachments and/or exhibits, as well as am familiar with the Defendant Internet Stores, as defined in the Complaint, and I have determined that the Defendants' products are not products that KJP made or authorized anyone to make, nor is the Defendants' use and featuring of KJP Advertising Materials, including exact, manipulated,

and/or Artificial Intelligence ("AI") generated photographs of KJP Products and/or KJP photographs from the KJP Website, authorized or approved by KJP.

11. KJP has never granted the Defendants any authorization, permission, or license to use, copy, or reproduce the KJP Advertising Materials. KJP has similarly never granted the Defendants authorization, permission, or license to use, copy, or reproduce any of KJP's photographs, videos, and content, including KJP's photographs from KJP's Website. KJP has never granted the Defendants any authorization, permission or license to use the KJP Marks, nor granted the Defendants the right sell or offer for sale KJP's Products

12. The Defendants have created and are offering for sale and selling their imitation products on the Defendant Internet Stores without KJP's permission or consent and in association with the KJP Advertising Materials. The Defendant Internet Stores, upon my assessment, appear, deliberately so, to unknowing customers to be an authorized online retailer, store, or wholesaler of genuine KJP Products, when they are not.

13. The Defendant Internet Stores, upon my assessment, use and/or feature exact, manipulated, and/or AI generated KJP Advertising Materials to mislead consumers and create the false impression that they and their imitation KJP products are genuine KJP products and/or approved or authorized by, or affiliated with, KJP when they are not. Similarly, upon my assessment, the Defendants appear to be deliberately manipulating KJP Advertising Materials, including exact, manipulated, and/or AI generated photographs of KJP Products and/or KJP photographs from KJP's website, to remove the KJP Marks.

14. For example, the Defendant Internet Stores use and/or feature KJP's Advertising Materials, including exact, manipulated, and/or AI generated photographs of KJP Products and/or KJP photographs from the KJP Website, when selling imitation KJP products and/or selling

reproductions of KJP designs.  As a further example, the Defendant Internet Stores are taking exact images from the KJP Website and/or KJP's social media, including KJP Products, and, before using them on the Defendant Internet Stores, have intentionally manipulated and/or altered the KJP Advertising Materials by removing the KJP tags on the Products and/or otherwise removing the KJP Marks.

15. KJP is concerned that its customers have already experienced, and will continue to experience, confusion stemming from Defendants' unauthorized use of the KJP Marks, Advertising Materials, and original content. The Defendants' products and/or goods and conduct are likely to cause confusion, mistake, or to deceive consumers into believing, mistakenly, that the Defendants are associated or affiliated with or sponsored by KJP, and irreparably harm KJP.

<u>The Defendant's Concealed Identity and Ill-Gotten Funds</u>

16. Upon information and belief, the Defendants have gone to great lengths to conceal their identity and anonymously operate their Internet Stores. No usable contact information is available or provided by the Defendant Internet Stores including an associated company or entity, identifiable owner name, usable physical address, and/or other contact information.

17. The Defendant Internet Stores are set up to accept payment in U.S. dollars via credit card and through PayPal (or other similarly situated payment processors) for the sale of the infringing and imitation products, purporting to be from KJP when they are not, nor authorized. Upon information and belief, the Defendants maintain offshore bank accounts and use their PayPal account(s) to take payment from Rhode Island residents for unauthorized imitation products and/or goods using KJP Advertising Materials.

18. Upon information and belief, the Defendants regularly move such ill-gotten funds from their PayPal account(s) to their offshore accounts to abscond with them and escape the

jurisdiction of this Court.  Upon information and belief, the Defendants intend to, and are likely to continue, and will swiftly upon learning of any action by KJP, abscond with the resulting ill-gotten funds received from violating KJP's rights to beyond the reach of this Court.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this ___26th___ day of ___November___, 2025

_____
Daniel Sardinha