UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

KIEL JAMES PATRICK, LLC,
Plaintiff,

v.

THE PARTNERSHIPS AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE A,
Defendants.

C.A. No. 25-cv-633-MRD-AEM

**MEMORANDUM AND ORDER**

Melissa R. DuBose, United States District Judge.

Plaintiff Kiel James Patrick, LLC ("Plaintiff") brought this lawsuit against sixteen business entities believed to be based in foreign jurisdictions, including the People's Republic of China, identified in an attached "Schedule A" document (the "Schedule A Defendants").[1] In its two count Complaint, Plaintiff alleges False

[1] The sixteen defendants listed in "Schedule A" are:

1. a sweater
2. BAICHENGSWEATER
3. Teuila
4. MGBloomThread
5. Flanders
6. er YL Clothing
7. KAILI WOOL KNITTING
8. Wuzhengqq
9. Meiduo Joy
10. YX Clothes
11. FASFS
12. Phybe Jeans
13. Stylish World

Designation of Origin and False Advertising under the Lanham Act for Federal Unfair Competition. *See* ECF No. 1 at 11-13. On September 30, 2026, default judgment was entered against fourteen of the Schedule A Defendants, who failed to file an Answer to the Complaint. ECF Nos. 38-41. The remaining Defendants, Phybe Jeans and XIC Loom Lore (together, the "Answering Defendants"), filed a joint Answer to the Complaint on March 12, 2026. ECF No. 25. Before the Court is the Answering Defendants' Motion to Dissolve or, Alternatively, to Modify Temporary Restraining Order.[2] ECF No. 30. For the following reasons, the motion is granted.

## I. BACKGROUND

Plaintiff is a Rhode Island business that "designs, creates, manufactures, and sells original fashion products and accessories," including seasonal and festive sweaters. ECF No. 1 ¶ 6; *see* ECF No. 1-1 at 20-70. According to Plaintiff, its products "are uniquely inspired by the unique aspects of New England life with emphasis on

14. Lemontreess
15. WUSHAOJUN
16. XIC Loom Lore

ECF No. 1-3.

[2] The Answering Defendants' motion is called a "Motion to Vacate" on the docket. ECF No. 30. The actual document is titled "Defendants Phybe Jeans' and XIC Loom Lore's Expedited *Motion to Dissolve* or, Alternatively, to Modify Temporary Restraining Order." ECF No. 30 at 1. For purposes of this Memorandum, the Court will refer to the motion as the Answering Defendants' Motion to Dissolve. For this type of motion, courts use the terms "vacate" and "dissolve" interchangeably. *See Melanson v. John J. Duane Co.,* 605 F.2d 31 (1st Cir. 1979) (dissolving a preliminary injunction); *see also Pauls v. Sec. of Air Force,* 457 F.2d 294 (1st Cir. 1972) (vacating and dissolving a temporary restraining order); *Vicor Corp. v. FII USA Inc.,* 132 F.4th 1 (1st Cir. 2025) (vacating a preliminary injunction).

themes such as living a nautical lifestyle, pursuing the 'American Dream,' and the aesthetics of New England's changing seasons." ECF No. 1 ¶ 6. The Schedule A Defendants consist of business entities believed to be based in China who, like Plaintiff, sell festive, seasonal sweaters online. *See* ECF No. 1-1 at 133-138, 159-165.

On November 26, 2025, Plaintiff filed the operative Complaint. ECF No. 1. Along with the Complaint, Plaintiff filed an *Ex Parte* Motion for an Emergency Temporary Restraining Order seeking to immediately restrain and enjoin the Schedule A Defendants from using and infringing Plaintiff's trademarks and advertising materials. ECF No. 2 at 1-4. On December 3, 2025, the Court granted the Motion for an Emergency Temporary Restraining Order against the Schedule A Defendants. ECF No. 11.

On December 19, 2025, Plaintiff filed a "Motion to Extend the TRO." ECF No. 14. The Court granted the motion on December 22, 2025, providing:.

> 2. The Temporary Restraining Order and Writ of Attachment entered by this Court on December 3, 2025, is EXTENDED in full force and effect for an additional period of at least fourteen (14) days, or for such other period as the Court deems just and proper;
>
> 3. All injunctive relief, restraints, prohibitions, and asset restraints set forth in the Court's December 3, 2025, Order remains in full force and effect during the extension period unless and until further order of this Court.

ECF No. 17 at 1-2. A hearing on the Motion for the Temporary Restraining Order was then scheduled for January 15, 2026 but, prior to this date, the hearing was cancelled. Thus, per the parties' understanding, the injunctive relief contemplated

in the Court's December 3, 2025 Order, ECF No. 11, has remained in effect since December 22, 2025, ECF No. 17.

On June 26, 2026, the Answering Defendants filed this Motion to Dissolve, and Plaintiff filed a response on July 10, 2026. Accordingly, the Motion is now ripe.

## II. LEGAL STANDARD

### A. Temporary Restraining Order and Preliminary Injunction

A temporary restraining order is a limited form of injunctive relief "designed to preserve the status quo until there is an opportunity to hold a hearing on the application for a preliminary injunction." *Colorado v. U.S. Dep't of Health & Hum. Servs.,* 783 F. Supp. 3d 641, 646 (D.R.I. 2025). This relief is intended to protect against "immediate and irreparable injury, loss, or damage [that] will result to the movant before the adverse party can be heard in opposition." Fed. R. Civ. P. 65(b). A temporary restraining order is issued for a period of up to fourteen days, typically without notice to the adverse party. Fed. R. Civ. P. 65(b)(1), (2).

A preliminary injunction, on the other hand, may remain in place for a longer duration, as it is intended to "preserve the relative positions of the parties until a trial on the merits can be held." *Starbucks Corp. v. McKinney,* 602 U.S. 339, 346 (2024) (quoting *Uni. of Tex. v. Camenisch,* 451 U.S. 390, 395 (1981)). While a temporary restraining order preserves the status quo until the adverse party has an opportunity to be heard, a preliminary injunction remains in place until the court can resolve the case on the merits. *See Francisco Sanchez v. Esso Standard Oil Co.*, 572 F.3d 1, 19 (1st Cir. 2009). This type of injunctive relief constitutes a drastic remedy

that is granted only where legal remedies are insufficient. *Voice of the Arab World, Inc. v. MDTV Med. News Now, Inc.*, 645 F.3d 26, 32 (1st Cir. 2011).

"The basic four-factor legal standard is the same for a temporary restraining order and a preliminary injunction." *Harris v. Wall*, 217 F. Supp. 3d 541, 552 (D.R.I. 2016). To succeed on a request for either form of relief, a movant must show: "(1) a substantial likelihood of success on the merits, (2) a significant risk of irreparable harm if the injunction is withheld, (3) a favorable balance of hardships, and (4) a fit (or lack of friction) between the injunction and the public interest." *Nieves-Márquez v. Puerto Rico*, 353 F.3d 108, 120 (1st Cir. 2003) (citing *McGuire v. Reilly,* 260 F.3d 36, 42 (1st Cir. 2001)). Beyond these factors, the Court remains cognizant that, because this relief is interim, it "must be guided by the traditional equity doctrine …" *Schnitzer Steel Indus., Inc. v. Dingman*, 639 F. Supp. 3d 222, 226 (D.R.I. 2022).

**B. Motion to Dissolve**

"A decision to *vacate* an existing preliminary injunction is … the effective equivalent of a *denial* of a preliminary injunction …" *Knapp Shoes, Inc. v. Sylvania Shoe Mfg. Corp.*, 15 F.3d 1222, 1228 (1st Cir. 1994) (emphasis in original). When deciding whether to grant a motion to dissolve or vacate injunctive relief, the Court must consider the "same considerations that guide a judge in deciding whether to grant or deny a [motion for injunctive relief] in the first place." *Id.* "In deciding whether to grant a motion to dissolve a preliminary injunction, a district court should consider new evidence that emerged after its original order to determine whether it affects the four-prong preliminary injunction analysis." *Jensen v. Rhode Island*

*Cannabis Control Comm'n*, No. 24-cv-191-MRD-AEM, 2026 WL 2364229, at *2 (D.R.I. Aug. 14, 2026) (citing *Knapp Shoes, Inc.*, 15 F.3d at 1228).

## III. DISCUSSION

### A. Status of the Injunctive Relief in this Case

As a primary matter, the Court clarifies its treatment of the injunctive relief currently in place in this matter. Even though the terms temporary restraining order and preliminary injunction have been used interchangeably throughout the travel of this case, if a temporary restraining order's duration and effect are "more than temporary[,] [i]t has to be treated for what it is, a preliminary injunction, not what it was labelled." *Melanson v. John J. Duane Co.,* 605 F.2d 31, 33 (1st Cir. 1979). Accordingly, the Court will continue its discussion here with the understanding that the operative order is postured as a preliminary injunction.

### B. Answering Defendants' Motion to Dissolve

To assess the Answering Defendants' Motion to Dissolve, the Court looks again to the preliminary injunction factors to determine whether this relief remains appropriate given the record before it and newly emerged circumstances. *Knapp Shoes, Inc.*, 15 F.3d at 1228. Notably, the Answering Defendants advocate for a particularized review of the claims against them, arguing that at the time the relief was issued, they were swept up in impermissible group pleading. *See* ECF No. 30 at 7-9. As the Answering Defendants see it, Plaintiff's "generalized accusations" against all the Schedule A Defendants are not applicable to them. *Id.* In support of this assertion, the Answering Defendants have submitted additional exhibits to show that

Plaintiff is not likely to succeed on the Lanham Act claims it has against them.[3] ECF Nos. 30-1–30-8. Rather than responding to the Answering Defendants' contentions directly, Plaintiff, in its briefing, highlights what it deems as undue delay and the Answering Defendants' failure to file a Rule 12 motion to dismiss.[4] *See generally* ECF No. 35. To respond to the merits of the Answering Defendants' challenge, Plaintiff directs the Court to its Orders granting its request for a temporary restraining order, and the extension of this relief (ECF Nos. 10, 11, 17). ECF No. 35 at 6-7. Plaintiff also argues that the Answering Defendants "have failed to demonstrate the significant change in law or fact required to disturb this Court's prior orders." ECF No. 16 (formatting modified). For the following reasons, the Court disagrees.

When applying the four-factor preliminary injunction test, "[t]he sine qua non of this [] inquiry is likelihood of success on the merits: if the moving party cannot

[3] In its brief, Plaintiff takes issue with the materials submitted by the Answering Defendants. *See* ECF No. 35 at 5. It says: to "the extent that Defendants attempt to introduce new information, they almost exclusively rely upon their own untested, self-serving declarations concerning their alleged sales, revenues, suppliers, and account balances. Defendants, however, have refused to participate in discovery that would permit [Plaintiff] to verify or test those assertions." *Id.* Mindful of the purpose of this Motion, which is not to resolve this matter on the merits but simply reassess the necessity of the injunctive relief in place, the Court is not moved by these statements. During the September 1, 2026, status conference, Plaintiff represented it was satisfied with the record before the Court and that there was no need for a hearing on this motion. Accordingly, the Court will assess the instant motion using the materials submitted on the docket.

[4] In their motion, the Answering Defendants challenge this Court's personal jurisdiction and aver that they were improperly served, ECF No. 30 at 14, 21. This Motion to Dissolve is not the proper vehicle to make these arguments, which are better placed in a Rule 12 motion.

demonstrate that [it] is likely to succeed in [its] quest, the remaining factors become matters of idle curiosity." *Esso Standard Oil Co. (Puerto Rico) v. Monroig-Zayas,* 445 F.3d 13, 18 (1st Cir. 2006) (internal quotation omitted). "To demonstrate likelihood of success on the merits, [a movant] must show 'more than mere possibility' of success – rather, they must establish a 'strong likelihood' that they will ultimately prevail." *Sindicato Puertorriqueño de Trabajadores v. Fortuño*, 699 F.3d 1, 10 (1st Cir. 2012) (quoting *Respect Maine PAC v. McKee,* 622 F.3d 13, 15 (1st Cir. 2010)). "In a trademark case, the key issue is the likelihood of success on the merits because the other decisions will flow from that ruling." *Keds Corp. v. Renee Int'l Trading Corp.,* 888 F.2d 215, 220 (1st Cir. 1989) (citing *Trak, Inc, v. Benner Ski, K.G.,* 475 F. Supp. 1076, 1078 (D. Mass. 1979)).

Plaintiff brings both its claims against the Answering Defendants under Section 43(a) of the Lanham Act. ECF No. 1 at 11-13. "Section 43(a) of the Lanham Act creates civil liability for 'any person who … uses in commerce any word, term, name, symbol, or device … which … is likely to cause confusion … as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person.'" *The Shell Co. (Puerto Rico) v. Los Frailes Serv. Station, Inc.*, 605 F.3d 10, 21 (1st Cir. 2010) (quoting 15 U.S.C. § 1125(a)(1)(A)). Here, Plaintiff brings claims for both False Designation of Origin and False Advertising under this Section. ECF No. 1 at 11-13.

*1. False Designation of Origin*

"Under Section 43(a), individuals may not falsely misrepresent the origin of goods, whether it be the geographic area, the source, or the manufacturer of the physical 'good' sold to the public." *Blake v. Prof'l Coin Grading Serv.*, 898 F. Supp. 2d 365, 382 (D. Mass. 2012) (citing *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 29 (2003)). Section 43(a) prohibits acts that "would create the impression that the products of the defendant originated with the plaintiff." *Purolator, Inc. v. EFRA Distributors, Inc.,* 687 F.2d 554, 561 (1st Cir. 1982). To succeed on a false designation of origin claim, the plaintiff must make "a showing that the marks or packaging of defendant create a likelihood of confusion with the products of the plaintiff…." *Id.*

Here, the Answering Defendants' position is that Plaintiff is unlikely to succeed on its false designation of origin claim because it "has not shown that [Answering] Defendants used [Plaintiff's] website photographs, or that the challenged images were copied, altered, or AI-generated in the way Plaintiff alleges[.]" ECF No. 30 at 10. While Plaintiff does not respond to this argument directly, the Complaint accuses the Schedule A Defendants of the unauthorized use of Plaintiff's website photographs. *See* ECF No. 1 ¶ 35. More specifically, Plaintiff alleges that the Schedule A Defendants used, reproduced, copied, or re-generated using artificial intelligence its website images. *Id.* ¶ 36. Having reviewed the exhibits submitted by the parties, the Court concludes that Plaintiff is unlikely to succeed on this claim.

First, the Court agrees with the Answering Defendants' conclusion that "Plaintiff has not identified a single competent piece of evidence showing that the challenged images were copied from [its] website, altered from [its] photographs, or generated by AI to impersonate [it]." ECF No. 30 at 9. At this stage, the Answering Defendants are also correct that Plaintiff has failed "to identify the specific KJP image URLs, file names, metadata, EXIF data, watermark evidence, or reverse-image-search results that would be necessary to support such a claim." *Id.* Meanwhile, the Answering Defendants have offered product-image evidence from an "independent sourcing agent, 1688.com," which illustrates that the images on their website were generated by a different commercial source than Plaintiff's website. *See* ECF Nos 30-7, 30-8. A review of Plaintiff's website further reveals that the images submitted by the Answering Defendants look dissimilar to Plaintiff's advertising materials, even if there is some similarity between the sweaters. *Compare id. with* https://kieljamespatrick.com/collections/womens-apparel-1 [https://perma.cc/L3HQ-SNWM]. Despite this similarity, the Court is only tasked with determining whether the challenged advertising imagery is likely to confuse consumers as to the origin of the sweaters. The Court cannot conclude so. Because the challenged images do not "create the impression that the products of the [Answering Defendants] originated with the [P]laintiff," *Purolator*, 687 F.2d at 561, the Court finds that Plaintiff has failed to show a likelihood of success on the merits for its Lanham Act false origin claim against the Answering Defendants.

*2. False Advertising*

Similarly, for Plaintiff to succeed on its false advertising claim under Section 43 of the Lanham Act, it must demonstrate that the Answering Defendants engaged in commercial promotion or advertising in a manner that "misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities." 15 U.S.C. § 1125(a)(1)(B); *see Cashmere & Camel Hair Mfrs. Inst. v. Saks Fifth Ave.*, 284 F.3d 302, 309 (1st Cir. 2002). "A plaintiff can succeed on a false advertising claim by proving either that an advertisement is false on its face or that the advertisement is literally true or ambiguous but likely to mislead and confuse consumers." *Clorox Co. P.R. v. Proctor & Gamble Com. Co.*, 228 F.3d 24, 33 (1st Cir. 2000). In the absence of evidence that an advertisement is "literally false … an additional burden is placed upon the plaintiff to show that the advertisement, though explicitly true, nonetheless conveys a misleading message to the viewing public." *Id.* To succeed on a false advertising claim, the Plaintiff must demonstrate five factors:

> (1) the defendant made a false or misleading description of fact or representation of fact in a commercial advertisement about his own or another's product; (2) the misrepresentation is material, in that it is likely to influence the purchasing decision; (3) the misrepresentation actually deceives or has the tendency to deceive a substantial segment of its audience; (4) the defendant placed the false or misleading statement in interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the misrepresentation, either by direct diversion of sales or by a lessening of goodwill associated with its products.

*Cashmere & Camel Hair*, 284 F.3d at 310-11. In cases where a plaintiff seeks an injunction, the First Circuit has held "a showing that the defendant's activities are

likely to cause confusion or to deceive customers is sufficient to warrant injunctive relief[.]" *Id.* (citing *Quabaug Rubber Co. v. Fabiano Shoe Co., Inc.,* 567 F.2d 154, 160-61 (1st Cir. 1977)). Regardless, Plaintiff bears the burden of establishing this claim. *Am. Bd. of Internal Med. v. Salas Rushford*, 114 F.4th 42, 65 (1st Cir. 2024).

Again, Plaintiff alleges that the Schedule A Defendants engaged in false advertising by using its advertising materials, particularly its website images, without permission. ECF No. 1 ¶¶ 42-43. Of this, the Answering Defendants argue "Plaintiff's false advertising theory also fails because it rests on the same unsupported premise that [they] used 'exact, manipulated, or AI generated photographs of [Plaintiff's] Products and/or [Plaintiff's] photographs from [its] Website.'" ECF No. 30 at 10 (citing ECF No. 1 ¶¶ 22-23). The Answering Defendants also contend that Plaintiff's claim fails because it has not demonstrated how the challenged images communicated any false claim, specifically about "source, sponsorship, approval, or [the] authenticity" of their products. *Id.* at 11.

Plaintiff disagrees. In doing so, it directs the Court to "representative example [images] attached to [its] Complaint," as "illustrative examples demonstrating [the Schedule A] Defendants' unauthorized actions and the manner in which the [Answering] Defendants advertised and sold imitation products through their Internet Stores." ECF No. 35 at 20-21 (citing ECF No. 1-1 at 64, 134; 18, 164). These images show pictures of Plaintiff's sweaters and those sold by the Answering Defendants. ECF No. 1-1 at 64, 134; 18, 164.

While the sweaters at issue here do look similar, it would be a stretch to conclude on the current record that the Answering Defendants' products and their promotional materials are misleading in a way that violates the Lanham Act. For starters, Plaintiff has not introduced any evidence that convinces this Court that the Answering Defendants made a false representation, nor that consumers have been misled or deceived by the images on the Answering Defendants' website. *See Clorox Co. Puerto Rico*, 228 F.3d at 33. Furthermore, there is no evidence on the current record that the Answering Defendants copied Plaintiff's trademarks or made a particular claim about their products that is verifiably false or misleading. Plaintiff has also failed to provide any evidence of injury or anticipated injury. *Cashmere & Camel Hair*, 284 F.3d at 311. Without these essential elements, the Court finds again that Plaintiff is not likely to succeed on the merits of its false advertising claim.

*3. The Remaining Preliminary Injunction Factors*

"[I]f the moving party cannot demonstrate that he is likely to succeed in his quest, the remaining [preliminary injunction] factors become matters of idle curiosity." *Esso Standard Oil Co. (Puerto Rico)*, 445 F.3d at 18. Here, based on the record currently before it, the Court has concluded that Plaintiff has failed to demonstrate a likelihood of success on the merits for its claims against the Answering Defendants. Accordingly, it declines to opine on the additional preliminary junction factors. The Answering Defendants have sufficiently demonstrated they are entitled to the relief they seek: dissolution of preliminary injunction currently in place in this case. Their motion is thus properly granted.

## IV. CONCLUSION

Based on the foregoing, the Answering Defendants' Motion to Dissolve is **GRANTED**. ECF No. 30. The preliminary injunction put in place on December 3, 2025, ECF No. 11, and extended on December 22, 2025, ECF No. 17, is **DISSOLVED**.

IT IS SO ORDERED.

Melissa R. DuBose
United States District Judge

October 7, 2026